**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

WAGNER HARMON,

               Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE,

               Defendant-Appellee.

No.   14-35228

D.C. No. 4:12-cv-00094-SEH

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted August 31, 2016
Seattle, Washington

Before: HAWKINS, McKEOWN, and DAVIS,[**] Circuit Judges.

    In this Administrative Procedure Act case, Wagner Harmon ("Harmon")

appeals the district court's grant of summary judgment to the United States, affirming

the decision of the U.S. Department of Agriculture Farm Service Agency ("FSA") that

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Andre M. Davis, Senior United States Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

Harmon was ineligible for farm program payments he had received from 2005 through 2008 and must refund those payments.[1]

Under the definitions set forth in the regulations that were in force at the time Harmon filed his application as an individual, the agency determined that in order to be "a person who is eligible to receive payments with respect to a particular farming operation," Harmon needed to not only demonstrate that he was "actively engaged in farming," 7 C.F.R. § 1400.201(a) (2005), but also that he qualified as a "separate person" as defined in subsection 2 of the definition of "person" in 7 C.F.R. § 1400.3 (2005).[2] An agency's interpretation of its own regulations is entitled to deference unless it is "plainly erroneous, inconsistent with the regulation, or based on an

---

[1] We grant Harmon's unopposed Motion to Take Judicial Notice.

[2] That subsection provides:

In order for an individual or entity, other than an individual or entity that is a member of a joint operation, to be considered a separate person for the purposes of this part, in addition to other provisions of this part, the individual or entity must:

(i) Have a separate and distinct interest in the land or the crop involved;

(ii) Exercise separate responsibility for such interest; and

(iii) Maintain funds or accounts separate from that of any other individual or entity for such interest.

impermissible construction of the governing statute." *Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1148 (9th Cir. 2003). Here, the definition of "person" in § 1400.3 expressly applies to all of part 1400 (Payment Limitation and Payment Eligibility), 7 C.F.R. § 1400.3(b), and 7 C.F.R. § 1400.101(a) (2005) can reasonably be read not to override the requirements spelled out there. The agency's interpretation is thus consistent with the regulations and not plainly erroneous.

In addition, the agency's determination that Harmon had not shown that he was a separate person from Little Muddy LLC ("Little Muddy") was supported by substantial evidence. Harmon claims that he and Little Muddy merely made combined purchases together to take advantage of Little Muddy's bulk purchase discount and that he reimbursed Little Muddy for his share of the purchases. However, the record reflects a large number of unexplained transfers or loans back and forth between Harmon and Little Muddy at random intervals and without accompanying documentation, which strongly suggests a comingling of funds and making operating loans to one another, so blurring the lines between the two as to make it impossible to determine the true assets and liabilities of either.

The agency's determination that Harmon's failure to maintain separateness required a return of program funds, even though he did not receive more than the per-person payment limitations of 7 C.F.R. § 1400.1(g) (2005), was not arbitrary and

3

capricious. Nothing in the statute or regulations authorizes a person to retain funds for which he or she never established eligibility in the first place. Rather, Harmon had the opportunity to make this argument in seeking equitable relief from the director, 7 U.S.C. § 7996(b), who considered the request but ultimately denied it because he determined Harmon had not made a good faith effort to comply. We lack jurisdiction to review that discretionary decision. *Id.* § 7996(f).

The "finality rule," which provides that any determination by a state or county FSA becomes "final . . . and binding 90 days from the date the application for benefits has been filed," 7 C.F.R. § 718.306(a), did not prevent the FSA from evaluating Harmon's program eligibility. The finality rule contains exceptions if the determination was based on misrepresentations or false statements or if the recipient had reason to know the determination was erroneous. *Id.* § 718.306(a)(2), (4). These exceptions do not require that the participant acted maliciously or with an intent to deceive, only that incorrect information was supplied that led to the erroneous determination. Here, the application included misinformation that Harmon provided 100% of capital and labor on his farm and that he did not receive any operating loans from related entities.

Finally, the lateness of the NAD director's determination does not render it void and permit Harmon to keep the funds. Although the director did not meet the thirty-

day deadline in the statute for issuing a determination, 7 U.S.C. § 6998(b)(2), the statute contains no remedy for a failure to comply.  In such instances, courts will not fashion their own sanction or penalty for noncompliance.  *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63-64 (1993); *cf. Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1400 (9th Cir. 1995) ("[F]ailure of an agency to act within a statutory time frame does not bar subsequent agency action absent a specific indication that Congress intended the time frame to serve as a bar.").

**AFFIRMED.**